[Civ. No. 2264. Fourth Appellate District.—May 8, 1939.]

JOSEPH L. BOYD, Administrator, etc., Appellant, v. J. M. LANCASTER, Respondent.

Edgar T. Fee for Appellant.

Chapman & Chapman and J. O. Reavis for Respondent.

GRIFFIN, J.—On *August 6, 1935,* the trial court made an order appointing C. M. Grove guardian *ad litem* of Henry O. Boyd, an alleged incompetent person, for the purpose of com-

mencing proceedings in his behalf to cancel a deed executed by the incompetent. On the same day the action was instituted, defendant and respondent appeared by answer and cross-complaint. After trial, the court on *June 29, 1937,* signed findings of fact and conclusions of law conditionally ordering respondent to reconvey the property upon the payment to respondent Lancaster of certain amounts therein specified and decreed that if the sums were not paid within 60 days from and after *July 1, 1937,* then the title to the property would be quieted in respondent, and appellant would take nothing. On *July 26, 1937,* the court signed an order modifying the interlocutory decree and granted an extension of time to *August 15, 1937,* in which to comply with the terms of that decree and provided an additional condition in reference to the deposit of the sum of $5,300 with the clerk of the court. On *August 16, 1937,* upon an *ex parte* application, there was entered in the minutes an order granting a stay of proceedings to comply with the order theretofore made, *to and including August 30, 1937.*

Henry O. Boyd died *on the 30th or 31st day of August, 1937.* The record is not clear as to the date of his death. The affidavit of counsel for appellant fixes the date as *August 30, 1937.* Counsel for respondent, in his notice of motion, suggested the date as *September 1, 1937.* The court in its judgment recites *August 31, 1937,* as the date of death. No proceedings to substitute an administrator as party plaintiff was ordered until *November 15, 1937.* Letters of administration with the will annexed were issued to Joseph L. Boyd *November 10, 1937.* After the death of Henry O. Boyd and prior to the substitution of the administrator as party plaintiff, the fact of Boyd's death was called to the attention of the trial court. A motion was thereafter made by respondent for an order signing and filing a final decree *nunc pro tunc* as of the day preceding the death of Henry O. Boyd, and the trial court found by minute entry that "the plaintiff (Henry O. Boyd) having failed to comply with the interlocutory judgment of *June 29, 1937,* and the orders of *July 26, 1937,* and *August 16, 1937,* it is ordered that title to the property be quieted in the defendant. It further appearing that the plaintiff has died since the signing of the last order and after the expiration of the time fixed, it is

ordered that said judgment be entered *nunc pro tunc* as of *August 17, 1937."*

Thereafter, and upon the same day, *September 22, 1937,* a signed judgment was entered and ordered recorded *nunc pro tunc* as of *August 31, 1937,* providing that title be quieted in respondent for the reason that no deposit had been made as required by the order of the court. Soon thereafter, on *October 27, 1937,* the court signed and filed an order amending the final judgment for the purpose of correcting a clerical error in the description of the property set forth in the final judgment made on the *22nd* day of *September, 1937,* and ordered that it be entered *nunc pro tunc* as of the date of the entry of the final decree. Appellant appeals from the judgment entered on the *21st* day of *September, 1937.*

Several questions are raised on this appeal. If the first question presented is to be answered in the affirmative, i. e., that the judgment is void or ineffectual in that it was disclosed that Henry O. Boyd, at the time of its entry, was deceased and that there had been no substitution of any duly qualified and authorized representative prior to the making thereof, then it becomes unnecessary to consider the other points raised.

In *Scoville* v. *Keglor,* 27 Cal. App. (2d) 17 [80 Pac. (2d) 162], this court had before it a similar question. We there held (quoting from the syllabus) that "Where such a judgment, and the findings on which it is based, are actually entered before there is any substitution of the representative of the deceased husband's estate, there is, as to the decedent's interest, no plaintiff before the court, and such defect goes to the jurisdiction of the court to file and enter such findings and judgment". See, also, *De Leonis* v. *Walsh,* 140 Cal. 175 [73 Pac. 813], wherein our Supreme Court said:

"It has been held that a court may direct that its findings of fact and conclusions of law thereon be filed as of a date anterior to the death of a party defendant against whom judgment is thereby ordered. . . .

"If in this case the findings had been properly filed on July 11, 1901, the authorities would compel us to hold that judgment was actually rendered on that day, and that the appeal was not taken in time to allow a review of the evidence. But that date also must be disregarded, we are satis-

fied, for the reason that at that time *there had been no substitution of any representative of the deceased.* (Italics ours.) The defendant having died, the court could, on motion, allow the action to be continued against his representative . . . , but it could regularly take no action in the case until there was a substitution of some one to defend the action, *especially as the death of the defendant had been suggested to it.* (Italics ours.) The rendition of judgment *nunc pro tunc* in *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 478 [41 Pac. 328], was made after such substitution and on notice. Until such substitution was had no judgment could legally be rendered, and, so far as the time of rendition of judgment is concerned, the case stands precisely as if no findings were ever filed.''

Appellant cites *Saddler* v. *California Bank,* 75 Cal. App. 488 [242 Pac. 1085], which holds a contrary rule. *Estate of Pillsbury,* 175 Cal. 454, 458 [166 Pac. 11, 3 A. L. R. 1396], is cited as authority for the contrary rule. The facts in *Estate of Pillsbury* are not similar and do not support the holding in the Saddler case. In *Estate of Pillsbury,* the court entered a judgment not knowing of the death of the decedent. When apprised of such fact the court set aside the judgment and several months thereafter and *after the appointment of an administrator* and *after the administrator,* through his attorney, *appeared in court and vigorously opposed respondent's motion* to enter the decree *nunc pro tunc,* another judgment *nunc pro tunc* was entered. (The fact that the administrator was appointed and prior to the signing of the subsequent decree he appeared and resisted the motion for a judgment *nunc pro tunc,* was obtained from the record in the cited case.) This is clearly the correct procedure under the cases heretofore cited. (See, also, *Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 478 [41 Pac. 328]; sec. 385, Code Civ. Proc.; *Conlin* v. *Blanchard,* 219 Cal. 632 [28 Pac. (2d) 12]; *Copp* v. *Rives,* 62 Cal. App. 776, 781 [217 Pac. 813]; *Estate of Thomas S. Page,* 50 Cal. 40; *Phelan* v. *Tyler,* 64 Cal. 80 [28 Pac. 114]; *Crossman* v. *Vivienda Water Co.,* 150 Cal. 575 [89 Pac. 335]; 1 Cal. Jur., sec. 34, p. 61.)

In *Maxon* v. *Avery, ante,* p. 300 [89 Pac. (2d) 684], which is a case factually similar and just decided by this court, we held that the authority of the guardian ended with the death of the ward and that a judgment entered after the

death of the real party in interest was void since no substitution of parties had been made, and held that the order entering the judgment *nunc pro tunc* was ineffectual.

■ The personal representatives of a deceased, i. e., his executors or administrators, are the persons to be substituted in an action which is continued following the death of the party, by virtue of section 385 of the Code of Civil Procedure. Upon their appointment and even before their substitution, all rights and interest in litigation vest in them, and they become the real parties in interest, and save for a possible exception in the case of death pending an appeal, the rule seems to be that the personal representative of the deceased must be brought into the suit as a party before he can be affected by any judgment. (*Judson* v. *Love,* 35 Cal. 463, 464; *Abadie* v. *Lobero,* 36 Cal. 390; 1 Cal. Jur., sec. 34, p. 61; 4 Am. St. Rep. 828; *Elliott* v. *Paterson,* 65 Cal. 109 [3 Pac. 493, 126 Am. St. Rep. 622, 637].) ■ It is the important function of a *nunc pro tunc* order to supply deficiencies in the record of orders or judgments already actually made or rendered so as to make the record conform to the truth. If the cause has been tried and finally submitted to the court for its judgment, the rights of the parties are to be determined as they existed at the time of such submission. Where the suitor is not at fault, the determining consideration is whether or not the action of the death of the party *was ready for the rendition of final judgment.* (*Estate of Pillsbury, supra;* 3 A. L. R. 1396; 14 Cal. Jur., sec. 40, p. 931; Freeman on Judgments, sec. 59.) This question has been thoroughly discussed in the late case of *Leavitt* v. *Gibson,* 3 Cal. (2d) 90 [43 Pac. (2d) 1091], and is decisive of the point here raised. The court there held (quoting from the syllabus) that "the court had power *after substitution of the executrices* (Italics ours) . . . to order judgment entered *nunc pro tunc* as of a date prior to the death of defendant".

■ Sometimes several issues of law and of fact are presented for the consideration of the court in the same suit or proceeding. In such case there can be no judgment from which an appeal can be taken when it remains necessary for the court to determine some issue of law or of fact. ■ In the instant case, on August 27, 1933, the Richfield Oil Company deposited $5,300 with the Title Insurance & Trust Company conditionally, in an effort to comply with the terms

of the decree. Whether there had been a substantial compliance with the order remained undetermined at the time of decedent's death. The rights of the parties, therefore, remained undetermined prior to the death of Mr. Boyd. The court ought to cease to exercise its jurisdiction over a party, at his death until an authorized representative has been appointed and substituted. (*Todhunter* v. *Klemmer*, 134 Cal. 60, 63 [66 Pac. 75]; *Phelan* v. *Tyler, supra*, p. 82.) A judgment rendered for or against a person after his death is reversible if the fact and time of his death appear in the record. (126 Am. St. Rep. 637.)

The case of *Los Angeles Auto Tractor Co.* v. *Superior Court*, 94 Cal. App. 433 [271 Pac. 363], involved an interlocutory decree given by the court after trial of the issues and *not one entered by stipulation of the parties*. By that interlocutory decree it was adjudged that the plaintiff's title to certain property be quieted against the claims of the defendant unless within thirty days after entry of judgment the company pay to a trustee for the plaintiff $15,500. It was provided that upon payment of said sum by the company to the trustee within said period plaintiff should execute a deed to the company and deliver a certificate of title, and if the company did not pay within the thirty-day period, then title should be quieted against defendant by final decree. No payment was made, and after the time had expired to make a deposit, plaintiff moved for final judgment. The motion was denied on a showing that defendant would be able to comply within a short period of time. No compliance was had and several similar applications were made for final judgment and were by the court continued or denied. Plaintiff sought a writ of mandate to compel the court to enter a final decree. The appellate court held that from the language of the interlocutory decree the trial court did not intend that the interlocutory judgment should of itself operate to complete the record of the action and that therefore it was subject to amendment by the trial court in the exercise of its discretion. There are many other authorities cited to the same effect. (*Gerrish* v. *Black*, 109 Mass. 474; 21 Cor. Jur., 703; 10 R. C. L., sec. 350, p. 562; *Security-First Nat. Bank of Los Angeles* v. *Superior Court*, 132 Cal. App. 683 [23 Pac. (2d) 1055]; *United States* v. *Swift & Co.*, 286 U. S. 106 [52 Sup. Ct. 460, 76 L. Ed. 999].) A different rule seems to prevail where the interlocutory decree is entered

by *stipulation*. (*Perry* v. *West Coast Bond etc. Co.,* 136 Cal. App. 557 [29 Pac. (2d) 279].)

"When further directions are reserved by a decree or order, it becomes necessary to set the cause down for hearing for such further directions." (*Los Angeles Auto Tractor* v. *Superior Court, supra;* Fletcher's Equity Pleading & Practice, par. 740.)

■ From the language of the instant decree it seems clear that the court did not intend that the "interlocutory judgment" should of itself operate to complete the record of the action, but that the court intended that the ultimate remedy as between two stated alternative conditions should depend upon the actions of the respective parties in relation to the execution of the decree, and that in accordance with those subsequent transactions a final judgment should be granted. The terms of the final judgment, therefore, would depend upon proof of the facts of such subsequent transactions.

We are unable, in view of the cited decisions, to avoid the conclusion that the trial court erred in undertaking to sign and enter its judgment before making an order of substitution of the administrator with the will annexed of the estate of Henry O. Boyd. In so far as the interest of the decedent was concerned, there was, at the date when the judgment was actually filed and entered, no plaintiff before the court, and an order made entering such a judgment *nunc pro tunc* at that time was ineffectual. The defect would appear to us to go to the jurisdiction to file and enter such an order.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Barnard, P. J., and Marks, J., concurred.