[Civ. No. 20342.    First Dist., Div. Two.    Nov. 16, 1962.]

MARJORIE S. PRICE, as Executrix, etc., et al., Plaintiffs and Respondents, v. JOHN D. SLAWTER, JR., Defendant and Appellant.

Di Maria, Daschback & Donovan and Philip A. Di Maria for Defendant and Appellant.

L. W. Wrixon and James W. Foley for Plaintiffs and Respondents.

KAUFMAN, P. J.—This is an appeal by John D. Slawter, Jr., one of the joint venturers, from an order dated May 3, 1961, confirming the sale of the real and personal property of the joint venturers as a unit, by a commissioner appointed in a judgment previously affirmed by this court (Division One) in *Price* v. *Slawter*, 184 Cal.App.2d 715 [7 Cal.Rptr. 830]. Appellant contends that the sale was void as it violated section 15040 of the Corporations Code and that it was unfair as the commissioner was an employee of the partnership and sold the property for less than its worth. There is no merit in either of these contentions.

■■ A brief summary of the events leading to this appeal is necessary for clarification of the precise issues presented. In 1955, four individuals, L. H. Price, E. W. Van Buskirk, John D. Slawter, Jr. and his brother, Ben Lee Slawter, formed a joint venture for the sale of a 97-unit motel in Barstow, California, to be known as the Desert Inn Motel. Although neither John D. Slawter, Jr., nor Ben Lee Slawter advanced any money, title to the joint venture real property was taken in the names of all four. The parties agreed that the venture was to be a short term one, as the motel was to be built for sale and would be sold within six months after completion, and not for permanent operation. The motel was constructed and completed in June 1956, but no sale was effected. Ben Lee Slawter and his wife took residence at the motel to operate it pending sale.

After Ben Slawter's death in October 1956, Price and Van Buskirk filed an action in declaratory relief against the appellant and the estate of his deceased brother for dissolution of the joint venture, an accounting, and declaration of the rights and duties of the parties under their various agreements. The trial court, on December 26, 1958, rendered its interlocutory judgment in favor of Price and Van Buskirk, decreed dissolution of the joint venture, pursuant to section 15031 of the Corporations Code, and directed that the assets be sold. The court also appointed George H. Sassard as commissioner to effect the sale and authorized him to accept at any sale of the joint venture property from L. H. Price and E. W. Van Buskirk as equivalent of cash, the amount owed by the joint venture to them, namely, $191,237.09 as of November 13, 1958, plus interest at 7 per cent from September 1, 1958, the sale of the property and improvements to be subject to existing encumbrances of record. The sale was enjoined by a writ of supersedeas pending determination of the appeal to

this court. On September 20, 1960, the judgment of December 26, 1958, was affirmed (*Price* v. *Slawter*, 184 Cal.App. 2d 715 [7 Cal.Rptr. 830]) and became the law of the case as to all matters relating to the formation of the joint venture and its dissolution (*Murphy* v. *Atchison, T. & S. F. Ry. Co.*, 162 Cal.App.2d 818 [329 P.2d 75]).

Thereafter, pursuant to the terms of the original judgment, the court commissioner conducted a sale on December 8, 1960, of the joint venture real and personal property. The successful bidders were L. H. Price and E. W. Van Buskirk, at a price of $100,000 subject to existing encumbrances of record. Thereafter, on December 30, 1960, the commissioner filed with the superior court his return of sale of the real property. Appellant filed no pleadings or other written opposition to the confirmation of the sale but appeared at the hearing conducted on February 28, 1961. After hearing oral and documentary evidence, the trial court on May 3, 1961, made its order confirming the sale of real and personal property. Notice of appeal was filed on June 26, 1961. Thereafter, on October 19, 1961, L. H. Price died and Marjorie S. Price, his executrix, was substituted as one of the respondents herein.

The first contention on appeal is that the sale was void as it violated section 15040 of the Corporations Code. So far as relevant, this section provides: ''In settling accounts between the partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary: . . . (b) The liabilities of the partnership shall rank in order of payment, as follows: I. Those owing to creditors other than partners, II. Those owing to partners other than for capital and profits, III. Those owing to partners in respect of capital, IV. Those owing to partners in respect of profits.''

Appellant contends that the sale to the respondents was in violation of the order prescribed by the statute, as on the date of the sale, December 8, 1960, there were joint venture creditors, and that the sale left the creditors with an empty joint venture estate. The record, however, indicates that at the February 1961, hearing, the trial court considered this matter moot, as the respondents paid all of the creditors within a few days after the sale, chiefly the property taxes which became due on December 12, 1960. Under these circumstances, we do not think that the trial court abused its discretion in considering the matter moot. The purpose of the statute is for the protection of creditors.

Appellant next contends that the sale was void, as

the published terms of the sale were cash, whereas the sale was made for the cancellation of the $100,000 indebtedness owed by the joint venture to the respondents. However, the court order directing the sale authorized the sale in this manner. The procedure of allowing the indebtedness due the respondents to be used as the equivalent of cash was specifically approved in *Owen* v. *Cohen,* 19 Cal.2d 147 [119 P.2d 713].

The uncontroverted evidence indicates that notice of the sale was properly given as required by section 692 of the Code of Civil Procedure. The sale was held by the commissioner at the time and place specified in the notice. In addition to the commissioner and his attorney, appellant and his attorney, Frances Slawter, respondent, E. W. Van Buskirk, Mr. MacMillan, an agent for L. H. Price, Mrs. Clary, the escrow officer, and a Mr. Harold A. Saltz were present at the sale. Prior to the sale, the judgment was read. Mr. Saltz submitted a bid of $230,000 but after being asked by the commissioner if it was a cash bid, he indicated he had no money but expected money from a Mr. Stone of Scottsdale, Arizona. The commissioner rejected the Saltz bid. Thereafter, respondents joined in making a bid of $100,000. Mr. Saltz renewed his bid of $230,000, indicating he expected the money to be at the Bank of America. The commissioner advised Mr. Saltz he would give him plenty of time to obtain his money and recessed the proceedings at 3 :30 p. m. At about 4 p. m., the commissioner continued the sale and informed Mr. Saltz his bid would be heard and that he would be given ample time if there was any chance of his obtaining the money. About 4 :20 p. m., Mr. Saltz withdrew his bid, left the room and did not return. Thereafter, at approximately 4 :30 p. m., the commissioner accepted the respondents' bid. Neither Mr. Saltz nor Mr. Stone appeared to testify at the hearing on the confirmation of the sale. Thus, the uncontroverted evidence indicates that the sale proceedings lasted for a three hour period and that Mr. Saltz, the only bidder other than the respondents, was given ample opportunity to obtain funds to qualify his bid. There is no indication that the sale was conducted in an unfair manner.

Appellant next contends that the sale was unfair because the commissioner was an employee of the joint venture prior to being made a commissioner. Appellant alleges that the commissioner did nothing to obtain bidders, except to legally advertise the sale and discouraged other prospective bidders. The record does not support any of these contentions. Ap-

pellant's witness testified that Mr. Sassard discouraged a prospective purchaser. Mr. Sassard denied ever seeing the witness or discouraging any prospective purchasers. ▮ The resolution of all conflicts in the evidence rests in the sound discretion of the trial court. The evidence here supports the trial court's finding on this matter.

The record further indicates that Mr. Sassard, the commissioner, was hired as an employee of the joint venture in 1957. After the death of Ben Lee Slawter, his widow managed the motel for several months. After an unsuccessful lease to an outside firm, the parties operated the motel through a resident manager. In 1958, Mr. Sassard was appointed by the superior court in another county as receiver of the Desert Inn Motel property in connection with an unlawful detainer proceeding involving a lessee. Mr. Sassard was originally recommended for this appointment by an attorney not connected with these proceedings or any parties thereto.

▮ The record also indicates that in violation of the judgment rendered in the original proceeding and affirmed by this court enjoining each of the joint venturers from encumbering, transferring, conveying or otherwise disposing of any of their interest in the Desert Inn Motel, the appellant as the record owner of one-fourth interest in the realty, transferred his interest in January 1959, and also suffered several liens and encumbrances totaling over $132,000 to be filed against the record title, for which the joint venture received "not a nickel." Thus, it would appear that appellant himself sufficiently discouraged any prospective purchasers. The uncontroverted evidence also indicated that the motel operation was not a successful one, as the average occupancy was only 51 per cent, as against the 70-80 per cent considered necessary for a reasonable profit in the industry.

Appellant next contends that the sale was unfair and void because the motel was sold for far less than its value. Respondents' expert witness testified that the motel was worth $500,000; appellant, $800,000. The face value of the listed liens against the property was approximately $132,000. The mortgage indebtedness against the property was about $183,-000 on the first deed of trust and about $5,000 on the second. The total face value of claims against the property of record was about $320,000. This would leave an equity ranging from about $180,000 according to respondents' expert appraiser or about $480,000 according to appellant's appraisal of the market value of the property. Appellant argues, therefore,

that the $100,000 which the respondents bid for the property indicates the unfairness of the sale.

Appellant's argument ignores the fact that his valuation was made without regard to the over $132,000 worth of liens which he had caused or permitted to be recorded against the property. The respondents' expert witness testified that the market value of the property was $500,000, *assuming the property was free and clear of all encumbrances*. However, the prior judgment indicated that the property was to be sold with all of its encumbrances, which at the date of sale amounted to a total of over $320,000. When this is added to the $100,000 bid, the total purchase price paid by the respondents is about $420,000. Thus, there is not the wide discrepancy which the appellant attempts to find. Respondents' expert also testified that the motel would not particularly be attractive to a prospective purchaser because it was an over-improved property for its location.

Furthermore, an examination of the existing authorities in this state indicates that the disparity between the $420,000 selling price and the $500,000 valuation made by the respondents' appraiser, even if not attributable largely to the liens and encumbrances placed thereon by the appellant and the poor operating history and potential of the Desert Inn Motel would not be a sufficient justification for relief as the accompanying fraud or unfairness which will suffice to make inadequacy of price a ground for setting aside a sale, must be such as accounts for and brings about the inadequate price (*Lesser & Son* v. *Seymour,* 35 Cal.2d 494 [218 P.2d 536]; *West Coast Life Ins. Co.* v. *Glenn-Colusa Irr. Dist.,* 50 Cal. App.2d 204 [122 P.2d 595]; *Jones* v. *Sierra Verdugo Water Co,.* 63 Cal.App. 254 [218 P. 454].)

Furthermore, even if the appellant were able to show an actual unfairness or inadequacy of the price, he still would not be entitled to any relief because of his own role in encumbering the property (*Machado* v. *Flores,* 75 Cal.App.2d 759 [171 P.2d 440]; *Leonard* v. *Bank of America etc. Assn.,* 16 Cal.App.2d 341 [60 P.2d 325]). However, the proper forum for a consideration of these encumbrances is the trial court on the accounting.

Order affirmed.

Shoemaker, J., and Agee, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 8, 1963.